**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|    Plaintiff, | § | |
| | § | |
|      v. | § | **CRIMINAL NO. 6:17-35(S)** |
| | § | |
| MARQ VINCENT PEREZ, | § | |
|    Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Marq Vincent Perez' Motion to Transfer and Motion for Contempt of Acting United States Attorney Abe Martinez (D.E. 45), to which the United States of America (the "Government") responded (D.E. 50) and Defendant replied (D.E. 54). The Court held a hearing on Defendant's motion on July 19, 2017.

## I. Background

On March 3, 2017, Defendant was arrested for his alleged possession of a destructive device in an attempt to set a car on fire in Victoria, Texas, on or about January 15, 2017. Because there is no magistrate judge sitting in Victoria, the Government presented the complaint to Magistrate Judge Janice Ellington in Corpus Christi, who signed the complaint the following day and conducted a detention hearing on March 9, 2017. At the detention hearing, the Government presented evidence of Defendant's possession of a destructive device on January 15, 2017, as well as his involvement in a series of other crimes in Victoria, including the burglary of the Victoria Islamic Center on or about January 22, 2017, and arson of the same mosque on or about January 28, 2017.

On March 23, 2017, a grand jury in Houston indicted Defendant on one count of possessing an unregistered destructive device, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d),

and 5871.[1] On March 24, Defendant filed a motion to transfer the case to Victoria or Corpus Christi. Before the Government could respond, the Houston Court ordered the case be transferred to the Corpus Christi Division. After closing its investigation in Houston, the Government filed a motion to transfer the case to the Victoria Division. Defendant objected, claiming he would not receive a fair trial in Victoria because "the news media in Victoria has been involved in a campaign of biased news coverage against the Defendant." D.E. 21, p. 2. On May 4, U.S. District Judge Nelva Gonzales Ramos held a hearing on the Government's motion to transfer, during which defense counsel repeated his claim that Defendant would not get a fair trial in Victoria due to media coverage. Judge Ramos overruled Defendant's objection, granted the Government's motion, and transferred the case to the Victoria Division.

On June 22, 2017, the grand jury in Victoria issued a Superseding Indictment charging Defendant with: (1) Hate Crime – Damage to Religious Property under 18 U.S.C. § 247(a)(1) for using a dangerous weapon, explosive, or fire to destroy the Victoria Islamic Center; (2) Use of Fire to Commit a Federal Felony under 18 U.S.C. § 844(h), in connection with the arson of the Victoria Islamic Center; and (3) Possession of an Unregistered Destructive Device under 26 U.S.C. §§ 5841, 5845, 5861(d), 5871, and 18 U.S.C. § 2, in connection with Defendant's attempt to set fire to a car on or about January 15, 2017.

Immediately after the Superseding Indictment was returned, the United States Attorney's Office (USAO) issued a media advisory stating that it would provide an update regarding the Victoria Islamic Center fire at a 2:00 P.M. press conference that day (D.E. 50-1). At 2:01 P.M., Defendant filed his Objection to the Press Conference (D.E. 43). His filing requested that his objection be heard before the press conference, which at that time was already underway. At the

---

1. The Government states that it initially presented this case to a grand jury in Houston because it had information that other individuals, located in Houston, may have been involved in the crimes under investigation.

press conference, Acting United States Attorney Abe Martinez and several representatives of the federal, state, and local law enforcement agencies involved in the investigation spoke and answered questions.[2] Defense counsel attended the press conference and was interviewed by the media afterwards.

Defendant now moves the Court to transfer the case back to the Corpus Christi Division based on the USAO's press conference and other pretrial publicity Defendant has received in Victoria. He also moves the Court to hold Mr. Martinez in contempt of court for issuing a media advisory and holding said press conference.

## II. Motion to Transfer

Under the Federal Rules, generally "the government must prosecute an offense in a district where the offense was committed," and district courts "must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." FED. R. CRIM. P. 18. However, upon the defendant's motion, the court must grant a change of venue if it "is satisfied that so great a prejudice against the defendant exists in the transferring district that [he] cannot obtain a fair and impartial trial there." FED. R. CRIM. P. 21(a).[3]

A change in venue "is not required absent a strong showing of prejudice." *See United States v. Duncan*, 919 F.2d 981, 985 (5th Cir. 1990). "When pretrial publicity is the basis for relief under Rule 21, a defendant must show that 'the publicity inflamed the jury pool, pervasively prejudiced the community against the defendant, probatively incriminated him, or

---

2. ATF Special Agent Fred Milanowski, FBI Special Agent Ed Michel, Victoria Fire Chief Taner Drake, City of Victoria Fire Marshal Thomas Legler, Victoria Police Chief Jeff Craig, Texas Department of Public Safety Sergeant Ruben San Miguel, Texas Ranger Drew Pilkington, Victoria County Sheriff T. Michael O'Connor, and Deputy State Fire Marshal Heath Mahlmann also participated in the press conference.

3. Rule 21 concerns transfers to another judicial district, while Rule 18 concerns transfers to another division within the same district. Motions made under the two rules are analyzed similarly; however, inter-district transfers implicate the Sixth Amendment while intra-district transfers do not. *See United States v. Lipscomb*, 299 F.3d 303, 339–40 (5th Cir. 2002).

exceeded the sensationalism inherent in the crime.'" *United States v. Wilcox*, 631 F.3d 740, 747 (5th Cir. 2011) (quoting *Lipscomb*, 299 F.3d at 343); *see also United States v. Smith-Bowman*, 76 F.3d 634, 637 (5th Cir. 1996) ("In order for a defendant to justify a motion to transfer on the basis of prejudicial publicity, he must establish that prejudicial, inflammatory publicity 'so saturated the community jury pool as to render it virtually impossible to obtain an impartial jury.'") In order to show prejudice based on pretrial publicity, the defendant must offer evidence of specific news stories that focus on him and involve incriminating information "of a nature that would influence a juror's decision." *United States v. Parker*, 877 F.2d 327, 331 (5th Cir. 1989) (pretrial publicity "was not inflammatory, nor was it of a nature that would influence a juror's decision" where it did not involve incriminating information, and defendant did not confess and had no prior criminal record); *see also, e.g.*, *Smith-Bowman*, 76 F.3d 634 at 637–38 (affirming denial of motion to transfer where defendant "did not include with her motion any copies of, or excerpts from, specific newspaper stories or television reports that focused on her, the charges against her, or the pending trial"); *United States v. Williams*, 817 F.2d 1136, 1138 (5th Cir. 1987) (where "the substance of the publicity could not be taken as probative of [defendant's] guilt," it "did not raise a serious question of possible prejudice").

A presumption of prejudice "attends only the extreme case" and may be remedied by prophylactic voir dire. *United States v. Skilling*, 561 U.S. 358, 381, 385 (2010). As the Fifth Circuit "fe[lt] compelled to note" in *Parker*:

> [E]ven if the community was saturated with inflammatory pretrial publicity sufficient to raise a presumption of prejudice, that presumption may be rebutted. "The government may demonstrate from the *voir dire* that an impartial jury was actually impaneled in appellant's case . . . If the government succeeds in doing so, the conviction will stand despite appellant's showing of adverse pretrial publicity." *United States v. Harrelson*, 754 F.2d 1153, 1159 (5th Cir. 1985) (citing [*United States v.*] *Chagra*, 669 F.2d 241, 250 [(5th Cir. 1982)]). In the

instant case, the voir dire conducted by the district judge was sufficient to ferret out any latent prejudice.

*Parker*, 877 F.2d at 331. *See also Smith-Bowman*, 76 F.3d at 637–38 (affirming denial of motion to transfer where "the district court questioned the prospective jurors during voir dire about their pretrial knowledge of the case, and . . . each said that they could base a verdict solely on the evidence presented in court, and none of them indicated that he had already formed an opinion concerning [the defendant's] guilt or innocence").

As set forth in Part I, *supra*, U.S. District Judge Nelva Gonzalez Ramos already heard and overruled Defendant's objections to the case being heard in the Victoria Division. Under Rule 18, she found: (1) there was no substantial connection to Corpus Christi; (2) the crimes occurred in Victoria; (3) the evidence and fact witnesses are located in Victoria; and (4) Defendant himself and some of the alleged victims reside in Victoria. 5/4/17 Hrg. Tr., D.E. 51 at 7:10-14. Addressing Defendant's claims regarding prejudicial media coverage, Judge Ramos correctly stated, "The standard for transferring a case from one division to another because of press coverage is extremely high and that's usually carried . . . Typically that motion's done in the middle of jury selection." *Id.* at 6:18-22.

In his pending motion to transfer before this Court, Defendant reurges his argument that pretrial publicity will prevent him from receiving a fair trial in Victoria. In support of this claim, Defendant has offered a list of 14 news articles and/or videos that have appeared on the *Victoria Advocate*'s online edition since his arrest in March 2017. D.E. 54-1. This evidence, while relevant, does not change the fact that Defendant's motion is premature.[4] As the Court stated during the hearing on Defendant's motion to transfer venue, the Fifth Circuit has recognized that

---

4. This evidence is also insufficient. Defendant submitted a list of headlines from the *Victoria Advocate*; however, the URLs provided are incomplete and do not direct the Court to the online version of each article or video. As the Court stated during the hearing, should Defendant reurge his motion to transfer at a later date, he must submit a copy of each article/video for the Court's consideration. *See Smith-Bowman*, 76 F.3d at 637.

"[h]olding a final decision on [such a] motion in abeyance pending the conclusion of voir dire is clearly the preferable procedure." *United States v. Williams*, 523 F.2d 1203, 1209 n.10 (5th Cir. 1975).[5]

Accordingly, the Court will carry Defendant's motion until jury selection. If the Court is unable to empanel an impartial jury, it will grant Defendant's motion to transfer at that time.

## III. Motion for Sanctions

Defendant further moves the Court to hold Acting United States Attorney Abe Martinez in contempt pursuant to 18 U.S.C. § 401, which provides that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as [m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1). Defendant specifically argues that Mr. Martinez' conduct of issuing a media advisory and holding a press conference in the United States Courthouse on June 22, 2017, violated 28 C.F.R § 50.2 and constituted "misbehavior" in contempt of this Court.

Section 50.2 is a policy statement promulgated by the Department of Justice pertaining to the release of information by DOJ personnel regarding criminal and civil proceedings. "The purpose of this statement is to formulate specific guidelines for the release of such information by personnel of the Department of Justice." 28 C.F.R. § 50.2(a)(1). The statement acknowledges that "there are valid reasons for making available to the public information about the administration of the law." *Id.* § 50.2(a)(2). To this end, DOJ personnel may make public "incontrovertible, factual matters" related to: (1) the defendant's name, age, residence, employment, marital status, and similar background information; (2) the substance or text of the

5. The Court further noted it will summon a jury pool from seven counties; as such, it is likely that majority of jury panel will come from outside Victoria and Victoria County.

charge, such as the complaint, indictment, or information; (3) the identity of the investigating and/or arresting agencies and the length or scope of an investigation; and (4) the circumstances immediately surrounding an arrest. *Id.* § 50.2(b)(3)(i)-(iv). However, DOJ personnel may not "include subjective observations" or make public: (1) any information concerning the defendant's prior criminal record; (2) observations about the defendant's character; (3) statements, admissions, confessions, or alibis attributable to the defendant, or his refusal to make a statement; (4) reference to investigative procedures such as fingerprints, polygraph examinations, ballistic tests, or laboratory tests, or to the defendant's refusal to submit to such tests; (5) statements concerning the identity, testimony, or credibility of prospective witnesses; (6) statements concerning evidence or argument in the case; or (7) any opinion as to the defendant's guilt or to the possibility of a plea of guilty to the offense charged or to a lesser offense. *Id.* §§ 50.2(b)(3), (b)(4), (b)(6). DOJ personnel are also prohibited from publicly releasing any information that "may reasonably be expected to influence the outcome of a pending or future trial." *Id.* § 50.2(b)(2).

As a policy statement only, § 50.2 does not create a private right of action for its enforcement. *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 121 (D.D.C. 2005) ("[T]he regulation at issue is a policy statement promulgated by the DOJ . . . Absent a clear indication of congressional intent to create a private right of action for the enforcement of this regulation, the Court cannot impose one."). Defense counsel admitted during the hearing that he could not find a single case in which a court has held the Government in contempt under § 50.2, and the Court similarly has been unable to locate any cases involving violations of this statement resulting in sanctions or disciplinary action.

Even if there were precedent for holding a federal prosecutor in contempt for violating § 50.2, the Court finds that Mr. Martinez' conduct did not violate this policy statement or otherwise constitute contempt. It does not appear that Mr. Martinez conducted the press conference to influence a jury verdict; instead, he conducted the press conference to convey information to the public about a case of national interest. Mr. Martinez explicitly stated that Defendant is innocent until proven guilty, limited his comments to uncontroverted facts allowed under § 50.2(b)(3)—most of which was already revealed at Defendant's detention hearing—, and did not make any subjective statements concerning Defendant or release any information prohibited under §§ 50.2(b)(4) or 50.2(b)(6). Mr. Martinez was also authorized under the ASAO's Media Relations Policy to comment on the diverse population living in the Southern District of Texas and law enforcement's commitment to protect every citizen therein, regardless of race, national origin, ethnicity, or religion. *See* U.S. ATTORNEY'S MANUAL § 1-7.520(D) – MEDIA RELATIONS, *available at* www.justice.gov/usam/usam-1-7000-media-relations (last visited Oct. 17, 2017) ("In the interest of furthering law enforcement goals, the public policy significance of a case may be discussed by the appropriate United States Attorney or Assistant Attorney General.").

Finally, the press conference was held in the basement conference room of the Martin Luther King, Jr. Federal Building in Victoria, not in the "United States Courthouse" as Defendant claims. Victoria's federal building houses a number of federal entities, including the U.S. District Court and USAO's offices, and building tenants are permitted to use the conference room as a joint use space. Thus, the press conference did not occur "in or so near the presence" of the Court as required by § 401(1). *See In re Stewart*, 571 F.2d 958, 966 (5th Cir. 1978) ("The words 'so near thereto' are meant as geographic terms that limit the subsection's application to

acts within the immediate vicinity of the courtroom, such as adjoining hallway or the jury room.") (citing *Nye v. United States*, 313 U.S. 33, 48–49 (1941)).

**IV. Conclusion**

For the reasons stated herein, Defendant's Motion for Contempt of Acting United States Attorney Abe Martinez (D.E. 45) is **DENIED**. The Court will carry Defendant's Motion to Transfer until trial.

It is so **ORDERED** this 18th day of October, 2017.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE