Case 6:17-cr-00035   Document 270   Filed on 06/06/23 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
June 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, §<br>   Plaintiff/Respondent, §<br>§<br>   v. §<br>§<br>MARQ VINCENT PEREZ, §<br>   Defendant/Movant. § | <br><br><br>CRIMINAL NO 6:17-35<br>CIVIL NO. 6:22-8<br><br> |

**MEMORANDUM OPINION & ORDER**

Defendant/Movant Marq Vincent Perez has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and memorandum in support. D.E. 257, 258. Now pending is the United States of America's (the "Government") Motion for Summary Judgment (D.E. 266), to which Movant has responded (D.E. 269).

**I. BACKGROUND**

Based on his supposed belief that the Victoria Islamic Center (the "Mosque") stored weapons, Movant broke into the Mosque with a juvenile at night to look for weapons on two separate occasions. Finding none, Movant nonetheless stole some items the first time and burned down the Mosque the second time by using a lighter to set fire to papers inside.

Following a six-day trial, a jury found Movant guilty of: intentionally defacing, damaging, and destroying religious real property because of its religious character using fire (Count One); knowingly using a fire and explosives to commit the violation in Count One (Count Two); and possessing an unregistered destructive device (Count Three). He was sentenced to 174 months on Count One and 120 months on Count Two, to run concurrently, plus a mandatory 120-month consecutive sentence on Count Three, for a total of 294 months' imprisonment.

1

The Fifth Circuit affirmed Movant's conviction and sentence on December 30, 2020. *United States v. Perez*, 839 F. App'x 870 (5th Cir. 2020). He did not petition the Supreme Court for a writ of certiorari, and his conviction became final on March 30, 2021. *See* FED. R. APP. P. 4(b)(1)(A)(i). He filed the current motion under 28 U.S.C. § 2255 on February 22, 2022. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant's § 2255 motion alleges ineffective assistance of trial counsel "at various stages of this case, and especially at pre-trial." D.E. 258, p. 1. Specifically: (1) counsel "was unprepared because of a lack of independent investigation of the facts;" (2) his "alibi theory [was] submitted without evidence or investigation;" (3) his "*Daubert* objections [were] offered without a plan of action;" (4) counsel "dropped the ball on witnesses and depended on hearsay and rumors;" and (5) he "failed in five factors that were necessary to be prepared for an effective defense at trial," specifically, "time for preparation, the lawyer's experience, the gravity of the charge, the complexity of the case[,] and the accessibility of witnesses." *Id.* at 11, 14, 16, 18, 21.

## III. LEGAL STANDARDS

### A.  18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. Regarding the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997). "A court need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).

## IV. ANALYSIS

### A. Failure to Investigate Crime Scene

Movant first claims that counsel "was unprepared because of a lack of independent investigation of the facts," and he "floated baseless theories at a pre-trial conference without any proof or evidence." D.E. 258, p. 11. Specifically, Movant complains that counsel did not visit the crime scene until October of 2017, five months after Movant's arrest and after the debris was cleared away. Counsel then suggested during a pretrial conference that the fire at the Mosque was caused by an electrical issue, rather than intentional arson, but his electrical fire theory was rejected by the Court.

Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)); *United States. v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014). Here, Movant "has failed to suggest with specificity what exculpatory evidence could have been uncovered by a more thorough investigation by his counsel, and has failed to show that counsel's [purported] failure to follow up on his leads was unreasonable." *Green*, 882 F.2d at 1002. Moreover, the Mosque burned down on January 15, 2017, and was demolished by a crew on February 2, 2017. Movant did not retain counsel until after his arrest over a month later. He does not explain how counsel could have sent an investigator to the site before it was demolished. He also does not explain how counsel was ineffective at trial, when he abandoned the "weak" and "unsubstantiated" electrical fire theory about which Movant complains, or how he was prejudiced at trial by a theory the jury never heard. Accordingly, this claim is denied.

4

### B. Failure to Investigate Movant's Alibi

Movant further alleges that counsel "raised a shallow alibi theory before the Court" during the May 2, 2018, pretrial hearing without first investigating who would "substantiate [Movant's] absence from the incident." D.E. 258, p. 14. Movant complains that, by the time of the pretrial hearing, counsel "had not done a sufficient investigation to supply the Court with the required facts to satisfy the alibi defense requirements," namely, the specific place Movant claimed to have been at the time of the offense and the name and contact information of each alibi witness upon which Movant intended to rely. *Id.*

Counsel submitted a sworn affidavit in response to Movant's claims, explaining, "Movant made no attempt to present evidence of his alibi to his counsel; nor witnesses to counsel of his alibi; nor to tell him that he had an alibi. [Movant] had no alibi for his own defense, and counsel could not come up with such witnesses to the alibi." DiCarlo Aff., D.E. 263, p. 3. Movant still does not claim that he had an alibi for the night of the crime. He also does not explain how counsel was ineffective at trial, when he abandoned the "shallow alibi theory" about which Movant complains, or how he was prejudiced at trial by a theory the jury never heard. Accordingly, this claim is denied.

### C. Frivolous *Daubert* Objections

Movant next complains that counsel's "*Daubert* objections [were] offered without a plan of action." D.E. 258, p. 16. Specifically, the objections were "boilerplate," and counsel "knew of the frivolity of the objections." *Id.* Movant does not explain how he was prejudiced at trial based on objections that were overruled at a pretrial conference, out of the presence of the jury. He also has not shown, nor does he even allege, that counsel was unprepared for the experts who did testify at trial. Accordingly, this claim is denied.

### D. Failure to Call Witnesses

Movant further maintains that counsel "dropped the ball on witnesses and depended on hearsay and rumors." D.E. 258, p. 18. Movant states that "there was a rumor that two of defense counsel's potential witnesses claimed to have set the fire," but "because of defense counsel's ineffective investigation, he was not able to even find and interview Judy Garcia and Joe Hoffman regarding their supposed actions." *Id.* However, the Government was able to find Garcia and Hoffman, who both denied setting the fire. Movant claims that counsel only floated this theory because he was "poorly prepared." *Id.* at 21.

The Fifth Circuit "ha[s] explained that 'complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.'" *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014) (quoting *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001)). To prevail on such a claim, "'the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.'" *Id.* (quoting *Day v. Quartermain*, 566 F.3d 527, 538 (5th Cir. 2009)).

The Court observed during the pretrial conference that "[l]aw enforcement investigated these rumors and debunked them;" they interviewed both Garcia and Hoffman, "who in their interview denied committing the crime." 5/2/2018 Hrg. Tr., D.E. 90:8-13. Counsel states that he does not recall much about Garcia and Hoffman. "I assume that I could not find them; or, that their testimony was irrelevant as [Movant] did not deny he set fire to the Islamic Center and therefore they would not state they started the fire at the Islamic Center." DiCarlo Aff. at 4.

Movant cannot show that counsel was ineffective for failing to call Garcia and Hoffman as witnesses because neither witness would have been favorable to the defense. Movant also does not

6

explain how he was prejudiced at trial based on "hearsay and rumors" counsel mentioned during a pretrial conference, out of the presence of the jury. Accordingly, this claim is denied.

### E.  Ineffective Defense at Trial

Finally, Movant alleges that counsel "failed in five factors that were necessary to be prepared for an effective defense at trial," specifically, "time for preparation, the lawyer's experience, the gravity of the charge, the complexity of the case and the accessibility of witnesses." D.E. 258, p. 21.

Movant complains that, more than a year after his arrest, the Government was able to discover admissible evidence, interview witnesses, and put together a case against him, but, as of the May 2, 2018, pretrial hearing, counsel still had no strategy as to how he was going to defend Movant. In response, counsel states that he did not reveal his trial strategy to the Court or to opposing counsel at the pretrial hearing because he was under no obligation to do so. DiCarlo Aff. at 4. Movant does not allege that counsel failed to present a vigorous defense at trial, nor has he shown that he was prejudiced by counsel's failure to disclose his trial strategy during the pretrial hearing.

Movant next claims that the "character of the lawyer was crucial to this case;" however, counsel was unprepared and "totally inept;" his actions during the May 2, 2018, pretrial conference were "one of a first year law student;" and his "lack of character was on full display." D.E. 258, pp. 24–25. Specifically, "counsel was not prepared for the gravity of the charge or the complexity of the case involved," and he did not grasp that he was "pitted against two assistant U.S. attorneys who, by their names are Muslims," which gave them "extra incentive to prosecute this case." *Id.* at 25–26. Movant's *ad hominem* attacks on counsel's character and conclusory allegations regarding his pretrial performance are insufficient to establish that counsel was constitutionally ineffective at trial.

Finally, Movant complains that counsel failed to designate Movant's father, Mario Perez, as an electrical expert "because this was not important to [counsel]." D.E. 258, p. 26. According to

Movant, "This goes to the removal of the electrical meters." *Id.* Counsel responds that Perez "could not testify to any facts or opinions that would help [Movant's] case; and, I do not believe he qualified as an expert as to the cause of the fire based upon experience, knowledge, training and education. The [defendant's] father's testimony would also be viewed as biased by the jury." DiCarlo Aff. at 6. Movant has offered no evidence that his father is in fact qualified as an electrical expert, nor does he explain why his father's testimony would have been favorable at trial, given that counsel's electrical fire theory was, in Movant's own words, "weak" and "unsubstantiated."

In sum, Movant has not shown that counsel was constitutionally deficient with mere complaints about his trial strategy and tactics. As the Government aptly states, his criticisms are "the ilk of 'Monday-morning quarterbacking on a Thursday' that the Fifth Circuit has squarely rejected in examining ineffective assistance of counsel claims." D.E. 266, p. 2 (quoting *United States v. Molina-Uribe*, 429 F.3d 514, 520 (5th Cir. 2005)).

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show that "jurists of reason would find

it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment (D.E. 266) is **GRANTED**; Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 257) is **DENIED**; and Movant is **DENIED** a Certificate of Appealability.

It is so **ORDERED** this 6th day of June, 2023.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE